TYSON, Judge, dissenting.
The majority's opinion finds clear, cogent, and convincing evidence supports the trial court's conclusion that the juvenile was neglected by Respondent and affirms the trial court's order to terminate his parental rights on the statutory ground of neglect. I disagree and respectfully dissent.
The majority's opinion "parades the horribles" of the actions of the mother, which formed the basis of DSS's petition to terminate the mother's parental rights. She is not a party to this appeal.
There is no indication in September 2013, when the initial petition alleging neglect by the mother was filed, that Respondent even knew he was the parent of a child. The trial court's review order, filed in February 2014, shows the juvenile's mother indicated Respondent may be the father of C.L.S. Subsequently, Respondent complied with a DNA paternity test in May 2014. DSS filed its petition to terminate *80 Respondent-father's parental rights in October 2014, only five months after Respondent learned he was C.L.S.'s father.
Nothing in the record shows Respondent was ever joined to the underlying action adjudicating C.L.S. neglected and dependent. The adjudication of C.L.S. was entered on 15 November 2013, months before Respondent knew he was the parent of a child. All of the statutorily required actions taken by DSS towards the initial goal of reunification with the child were aimed solely at the mother, not at Respondent.
The transcript shows Respondent was incarcerated one month after the DNA test revealed his paternity. At the time of the Termination of Parental Rights hearing, Respondent had not been tried for the offenses for which he was incarcerated awaiting trial.
Neglect
The majority finds there was clear, cogent and convincing evidence to support the trial court's conclusion that C.L.S. was neglected by Respondent and grounds existed for termination of Respondent's parental rights. I disagree.
"[I]n deciding whether a child is neglected for purposes of terminating parental rights, the dispositive question is the fitness of the parent to care for the child 'at the time of the termination proceeding.' " In re L.O.K., 174 N.C.App. 426, 435, 621 S.E.2d 236, 242 (2005) (quoting In re Ballard, 311 N.C. 708, 715, 319 S.E.2d 227, 232 (1984) ). When, however, *684 as here, "a child has not been in the custody of the parent for a significant period of time prior to the termination hearing, requiring the petitioner in such circumstances to show that the child is currently neglected by the parent would make termination of parental rights impossible." Id. (internal quotation marks and citation omitted). "In those circumstances, a trial court may find that grounds for termination exist upon a showing of a history of neglect by the parent and the probability of a repetition of neglect." Id. (citation and internal quotation marks omitted).
In this case, while there was a prior adjudication of neglect, the sole party responsible for the neglect was clearly the juvenile's mother, not Respondent. Respondent never had custody of the juvenile, and his paternity of the juvenile was unknown until well after the adjudication of neglect. No evidence can support a finding that Respondent had previously neglected C.L.S. Without any evidence, much less the absence of clear, cogent and convincing evidence of prior neglect, Petitioner utterly failed to show neglect at the time of the hearing. In re J.G.B., 177 N.C.App. 375, 382, 628 S.E.2d 450, 455 (2006).
*81 The majority's opinion states "while incarceration may limit a parent's ability to show affection, it is not an excuse for [a parent's] failure to show interest in a child's welfare by whatever means available, [because a] father's neglect of his child cannot be negated by incarceration alone." (citing In re D.J.D., D.M.D., S.J.D., J.M.D., 171 N.C.App. 230, 240, 615 S.E.2d 26, 33 (2005) ). This assertion is wholly inapplicable and fallacious here, where the father was incarcerated one month after learning he was a father. He was not provided any real opportunity to show interest in his child.
I do not find the testimony of the Petitioner DSS's social worker that after Respondent was incarcerated he indicated he wished to enter a case plan, wanted his attorney's review and input before he signed, and that she never received it to be clear, cogent or convincing evidence to support a failure "to provide love, support, affection, and personal contact" to C.L.S. In re D.J.D., 171 N.C.App. at 240, 615 S.E.2d at 33.
The trial court erred in concluding grounds existed under N.C. Gen.Stat. § 7B-1111(a)(1) to terminate Respondent's parental rights.
After concluding termination based upon neglect was proper, the majority's opinion does not address the remainder of Respondent's arguments. Since termination based upon neglect was without any foundation, I address Respondent's remaining arguments.
Failure to Make Reasonable Progress
Respondent argues the trial court erred by concluding C.L.S. had been "willfully left" in foster care or placement outside the home for more than twelve months as set forth in N.C. Gen.Stat. § 7B-1111(a)(2).
A trial court may terminate parental rights upon a finding that the parent, "willfully left the juvenile in foster care ... for more than 12 months without showing ... reasonable progress under the circumstances has been made in correcting those conditions which led to the removal of the juvenile." N.C. Gen.Stat. § 7B-1111(a)(2) (2013). For the trial court to terminate for failure to make reasonable progress, DSS must show that the parent had the ability to make progress but was "unwilling to make the effort." In re O.C. and O.B., 171 N.C.App. 457, 465, 615 S.E.2d 391, 396 (2005) (citation omitted).
Here Respondent's paternity of the juvenile was unknown both when DSS initially filed its petition and when the juvenile was adjudicated neglected and dependent. No evidence in the record shows Respondent was aware of his possible paternity of the juvenile prior *82 to these dates until May 2015. The petition to terminate Respondent's parental rights was filed 14 October 2014, five months later, less than the statutorily required twelve months. As a consequence, and without any clear, cogent and convincing evidence, the trial court erred by concluding C.L.S. had been "willfully left" in foster care or placement outside the home for more than twelve months as set forth in N.C. Gen.Stat. § 7B-1111(a)(2).
Failure to Legitimate
The trial court also erred in its conclusion that Respondent failed to establish paternity or legitimate the child by any of the statutorily *685 mandated methods. This conclusion is unsupported by any finding of fact and supported by no clear, cogent or convincing evidence.
In its termination order, the trial court included a conclusory statement in its FINDINGS OF FACT that DSS during the pretrial hearing had identified as a ground for termination of parental rights "that Respondent-Father has failed to take steps to legitimize the minor child." The trial court makes no further findings regarding Respondent and any failure to establish paternity or legitimate C.L.S. through any of the means enumerated in N.C. Gen.Stat. § 7B-1111(a)(5).
N.C. Gen.Stat. § 7B-1111(a)(5) authorizes termination where the father has not prior to the petition:
a. Filed an affidavit of paternity in a central registry maintained by the Department of Health and Human Services; provided, the petitioner or movant shall inquire of the Department of Health and Human Services as to whether such an affidavit has been so filed and the Department's certified reply shall be submitted to and considered by the court. [or]
b. Legitimated the juvenile pursuant to provisions of G.S. 49-10, G.S. 49-12.1, or filed a petition for this specific purpose. [or]
c. Legitimated the juvenile by marriage to the mother of the juvenile. [or]
d. Provided substantial financial support or consistent care with respect to the juvenile and mother. [or]
e. Established paternity through G.S. 49-14, 110-132, 130A-101, 130A-118, or other judicial proceeding.
N.C. Gen.Stat. § 7B-1111(a)(5) (2013).
*83 The trial court must make specific findings of fact as to each subsection of N.C. Gen.Stat. § 7B-1111(a)(5). In re I.S., 170 N.C.App. 78, 88, 611 S.E.2d 467, 473 (2005) (emphasis supplied) (citing In re Harris, 87 N.C.App. 179, 188, 360 S.E.2d 485, 490 (1987) ). The trial court's conclusion that the ground for termination pursuant N.C. Gen.Stat. § 7B-1111(a)(5) exists is not supported by the requisite findings based upon clear, cogent and convincing evidence. The trial court's conclusion that grounds existed to terminate Respondent's parental rights pursuant to N.C. Gen.Stat. § 7B-1111(a)(5) is erroneous, and must be reversed.
For all of these reasons, the majority's opinion is wholly opposite to the statutes and controlling case law. The trial court's conclusion that statutory grounds exist to terminate the parental rights of Respondent-father is not supported by clear, cogent and convincing evidence. The trial court's order is affected by reversible error and should be reversed. I respectfully dissent.